Majority Deport oe Committee on Privileges and Elections.
In Assembly, April Mh, 1840.
Mr. T. PI. Porter, from the majority of the standing committee on privileges and elections, to which was referred the several petitions of sundry citizens of the city of Schenectady, alleging certain frauds in the second ward of said city at the general election in 1839, upon the ballot-boxes; and praying that John I. De Graff be allowed to *121 to take his seat as a member of the Assembly, in -the place of Theodore W. Sanders, who is alleged to be wrongfully returned by means, of said frauds, reported as follows:
N.EPOET OE THE MAJORITY OE THE COMMITTEE ON PRIVILEGES AND Elections on the Petitions oe Electors oe Schenectady County.
Mr. T. IT. Porter, from the majority of the committee on privileges and elections, to which was referred several petitions of sundry electors and inhabitants of the county, of Schenectady, together with various document's, reports :
That soon after such reference, your committee met to examine the subject committed to them and deliberate upon the most correct mode of investigation, adapted to arrive at a just result between the conflicting interests involved. In determining upon some plan of action suited to guide them in their subsequent duties, your committee was well aware that it would be almost, or quite, impossible to satisfy the wishes or expectations of the respective parties concerned, by adopting any course short of free and full examination; and they, therefore, entered upon their course of inquiry with a single eye to full investigation. Tour committee beg leave to observe, they have met with peculiar difficulties irr the novelty of this case; for so far as the knowledge of your committee extends, none has heretofore been presented to your honorable body under similar circumstances; after an attentive perusal of the petitions and documents, the fact that John I. De Graff, for whose benefit the proceeding purported to have brought before your honorable body, and who had been the rival' candidate against Theodore W. Saunders, the sitting member, did not appear as a petitioner, or as claimant before this House, impressed itself upon the mind of your committee, as a truly remarkable feature, and seemed to them, at least, informal and without parallel: Eor in all cases of. contested elections adjudicated upon in this House, or acted upon in our national legislative halls, so far as your committee have been enabled to discover, the person desiring possession of a disputed seat has always been the claimant in proper person against the right of the sitting member. Tour committee suggested this to the counsel of the petitioners and the counsel of the sitting member, and proposed to them that the investigation should be had in the way and manner directed by the law of this State, title 5, chapter Y, part 1 of the Devised Statutes; to this, however, neither *122 of tlie counsel were willing to accede. Eor the purpose of justice, your committee were obliged to reject, as proof, the affidavits attached to the petitions referred, because wholly ex-parte, and not within the scope of any of the provisions of the revised laws which particularly apply to contested elections, and without an adherence to which regulations, there seems no mode of evidence.
The petitioners set forth allege, as a cause why their prayer should be granted, that they believe a daring fraud has been committed by some person or persons, in abstracting ballots from the ballot-box kept during the late general election in the second ward of the city of Schenectady. They also state, that one hundred and seven persons had made affidavit that they had voted at the last election held in the second ward of the city of Schenectady, for John I. De Graff, and that they were all assured that at least ten more would make the like affidavit. They also attached to their petition a transcript of the official canvass of the second ward of the city, and likewise of the statement of the board of county canvassers, which your committee include in this report.
“ Seoond Ward Canvass
“¥e the board of inspectors of elections for the second ward of the city of Schenectady, in the county of Schenectady, do certify, that the following is a correct statement of the result of a general election held in said ward, on the fourth, fifth and sixth days of November, in the year one thousand eight hundred thirty-nine, for the election of three Senators for the third Senate district, one member of Assembly, for the county of Schenectady, and one coroner for the same county, viz.
“ That the whole number of votes given for the office of Senator was eight hundred and forty-nine, of which Friend Humphrey received one hundred and eighty-two ; Mitchell Sanford received one hundred and eighty ;. Erastus Hoot received one hundred and seventy-seven ; William H. Wilson received one hundred and three ; Amasa J. Parker received one hundred and three; Henry W. Strong received one hundred and one ; Israel Smith received two, and William McOamus received one.
“ That the whole number of' votes given for the office of member of Assembly for the said county was two hundred and eighty-four, of which Theodore W. Sanders received one hundred and ninety-seven, and John I. De Graff received eighty-seven.
*123 “ That the whole number of votes given for the office of coroner of the said county was two hundred and eighty, of which -Edwin Erisbee received one hundred and seventh-five, G-eorge Conklin received one hundred and four, and Conklin received one.
“ In witness whereof, we have hereto subscribed our names,, this seventh day of November, 1839.
“DAYID M. MOORE,
“JOHN A. MERSELIS, “JOHN LASSELS,

“ Inspectors of the said Election! .

“ The county .board of canvassers of the county of Schenectady having met at the office of the clerk of the said county, in the city of Schenectady, on Tuesday, the twelfth day of November, in the year one thousand eight hundred and thirty-nine, a majority of said board being present, and having received the statements of the votes taken in each ward and town in the said county, at a general election held-on the fourth, fifth and sixth days of November, in the year aforesaid, proceeded to estimate and canvass the votes of the said county so given ; and it is certified that on such estimate and canvass, it appeared that the whole number of votes given at the said election, in said county, for member of Assembly, was three thousand and twenty-three, of which Theodore W.. Sanders received fifteen hundred and thirty-nine, and John I. De Graff received fourteen hundred and eighty-four. That the whole number of votes given in the said county at the said election for coroner, was three thousand and nineteen, of which Edwin Erisbee received fourteen hundred and eighty-seven, and George Conklin received fifteen hundred and thirty. Conklin received one ; Archibald L. Linn received one.
“ In witness whereof, this statement is certified to be correct, and is attested by the signatures of the chairman and the secretary of the said board, this twelfth day of November, 1839.
“N. YANTRANKIN,
“ Abohibald Campbell,
“ County Cleric and Secretary!

“ Chairman.

“ State of New Tobe, ) Schenectady County ClerFs Office, j
“ I, Theodore R. Tan Ingen, deputy clerk of the county of Schenectady, do hereby certify that I have compared the foregoing *124 with the original return of the inspectors of elections of the second ward of the city of Schenectady, and the original statement of the board of county canvassers, of the votes given for member of Assembly and county officers for the county of Schenectady, now remaining on file in this office, and that the same are correct transcripts therefrom, and of the whole of such originals.
uIn witness whereof, I have hereunto subscribed my name, and affixed the seal of said county this 25th day of December, 1839.
■ “ T. E. YAN INGEN,
“ Deputy OlerTc.”
The committee having determined, in accordance to what they deemed due to the importance .of the matters submitted to their consideration, to reject all ex-parte evidence, considered themselves required to apply to the house for power to send for persons and papers; which power being granted by the House, the chairman, in pursuance of the order of the committee, issued summonses for such persons as were required by the respective counsel; and in compliance with the summonses so issued, the following named persons appeared before the committee, and each of whom for himself testified that he voted for John I. De Graff, to which testimony the committee take leave to refer the House, viz.: Nathaniel Pratt, marked No. 36 ; Jacob Yan Yranken, Jr. marked No. 37; John Farns-worth, marked No. 38 ; Abram Lewis, marked No. 39 ; Peter Y. Peck, marked No. 40 ; Solomon Drullard, marked No. 41 ; Joseb Shurtliff, marked No. 35; Jacob Ohristianse, marked No. 42; Isaac 0. Ohristianse, marked number 43; Alonzo B. Cory, marked No. 34; Henry Teller, marked No. 44; John B. Bonney, marked No. 45; Jacob Y. Steers, marked No. 46; Eobert 0. Dorn, marked No. 47 ; Lewis Ford, marked No. 48 ; Isaac Yan Wormer, marked No. 49 ; Lawerence Slover, marked No. 50 ; Patrick Keyes, marked No. 51; Freeman Thomas, marked No. 52; William H. Olute, marked No. 53; Edward H. Walton, marked No. 54; George Brown, marked No. 55; Horace B. Bills, marked No. 56; John Corl, marked No. 57; Myndert Y. G. Bonney marked _No. 58; Patrick McCart, marked No. 59; Lewis Eaymond, marked No. 60; Isaac W. Crane, marked No.' 61; William Fuller, marked No. 62; Allen miner, marked No. 63; John W. Cory, marked No. 64; Stephen Clark, marked No. 65; Charles Ball, marked No. 66; Andréw C. Yan Eps, marked No. 67 : Benjamin P. Shelden, marked *125 No. 68 ; George F. Yedder, marked No. 69; Andrew Truax, marked No. 70; Charles Dubois, marked No. 71; Cornelius Thompson, marked No. 72; Eleazar Clute, marked No. 73; John Babcock, marked No. 74; Jacob Beakley, marked No.-75; David Frank, marked No. 76 ; Yincent Blackburn, marked No. 77; Bob-erfc M. Fuller, marked No. 78; Nelson Hall, marked No. 79. And that Thomas Harmon, Joshua D. Harmon, Henry Smith, William Schermerhorn, Stephen Cooper, Herman Yan Schaick, Byer J. Schermerhorn, Peter Ouderkirk, John B. Schermerhorn, Ichabod W. Briggs, and Adrian Y. S. Barhydt, were severally sworn and testified; to whose testimony, numbered 1, 2, 3, 4, 5, 6, 7, the committee beg leave to refer the House; and the committee also refer the House to the testimony of Abraham Doty,' marked No: 80; David Lyon, marked No. 81; John Davis marked No. 82; John McKim, marked No. 83; H. Y. Schaick, marked No. 84; Elias Alsdorf, marked No. 85 ; ¥m. B. Conant, marked No. 86; persons called by the petitioners.
The committee farther report, that during the course of the investigation, the counsel for the sitting member, with a view to expedition as suggested by him, and at the solicitation of the counsel for the petitioners, admitted that the following named persons voted at the last general election, held in the second ward in the city of Schenectady, for John I. Degraff, namely: M. B. Case, Abraham A. Yau Yoost, George Anderson, John A. Barhydt, David Kittle, James M. Bouck, Boswell Perry, Corneilus J. Barhydt, James M. Albright,- William Ouderkirk, D.H. Baker, James H. Ward, Andrew Fame, Yolney Freeman. Christopher Devoe, William Tole, James Y. S. Biley, John Yrooman, Peter H. Clute, Giles Yates, Elias Ayres, 'David P. Lancaster, Isaac Ledyard, John C. Barhydt, John Titus, David M. Moore, William H. Grout, Daniel T. Hoag, George Topping, William Sprague, Samuel Harman, Isaac G. Eldred, Matthew Putnam, L. W. Teller, John Consaul G. J. Swartfager, Alanson Sherman, I. D. Harman, JolinB. Edick. David Oxby, Jasper Nichols, L. J. Barhydt, Nicholas Bosa, D. W. Beed, James Courter, N. Bar-hydt, Cornelius Duane, William Cunningham, Solomon B. King, John S. Bonney, Peter Dorsh, James E. Kittle, Tunis Yrooman, Peter Yan 0. Linder, Stephen Waldron and John J. Fuller.
The committee also refer the House to the testimony of John A. Barhydt, marked No. 8 ; Nelson Yan Yalkeuburgh, marked No. 9 ; John B. Edick, marked No. 10; Isaac 0. Christianse, marked No. 11; *126 Henry R. Wendall, marked Ho.' 12; Peter Ouderkirk, marked Ho. 13; and James M. Albright, marked Ho. 14; which was taken at the request of the counsel for the petitioners.
At the request of the counsel for Theodore W. Sanders, summonses were issued for the persons hereafter named, and who in compliance therewith appeared before the committee, viz: David M. Moore, John A. Merseles, and John Lassels, inspectors of the second ward election in the city of Schenectady, at. the last general election and to whose testimony, marked Ho. 15, Ho. 16, Ho. 17, the committee refer the House. Also to the testimony of John Yan Sant-voord, marked Ho. 18; John Hull Jr., marked Ho. 19; clerks of said election ; likewise to the testimony of John Matthews, marked Ho. 20; William McCamus, marked Ho. .21; John Ohlen marked Ho. 22; and John Constable, marked Ho. 23, in relation to the character and standing of the inspectors and clerks. Also to the testimoiry of Henry Mercelis, marked Ho. 24; William E. Russell, marked Ho. 25 ; ana David Leavitt, marked Ho. 26, relative to the ballot-box. And the committee also refer the house to the testimony of Samuel Irish, marked Ho. 27; John Hull, Jr., marked Ho. 28; Simon Glen, Jr., marked Ho 29; John Lassells, marked Ho. 30; Jared Anthony, marked Ho. 31; Michael. Gerben, marked Ho. 32; and John G. Joyce, marked Ho. 33;
The county ballot-box used in the second ward, at the last Hovem-ber election, in relation to which, and the custody thereof, the charge of fraud and abstraction, is specially directed, was produced, and the identity thereof satisfactorily proved to the committee, and they avail themselves of this stage of their report to remark, that in the security of its construction, they have never seen a ballot-box better adapted to prevent fraud than the one in question. It is so grooved and nailed, that to take its body apart without detection, is almost or quite impossible. There are two covers to it; the inner one running into grooves, with an aperture in it for the admission of ballots. The outer cover also runs into grooves, and is so framed at the lock end, that when closed, the inside cover cannot be seen or touched. The outer cover has no aperture. The lock was apparently in good order; is of brass, and not what is called an ordinary lock. Your committee, from an inspection of such ballot-box, was led to the conclusion that without the possession of a key fitted to open the lock after it was locked, sealed and taped with a view to security, any abstraction of ballots from it, without leaving unquestionable marks of violence *127 upon the box, would be impossible. That uothiug short of possession by the person designing fraud upon it, of key, seal, and the other items used for security (as stated by the inspectors), could enable him to consummate a fraud upon it without certain detection. The committee have arranged the testimony applying to the ballot-box, and the inspectors of the second ward in such manner that this House maj1- see at once, the charges of the petitioners as supported by testimony, and the refutations of the sitting member, also supported by testimony. And first, they refer the House to the testimony of John A. Barhydt, marked No. 8; also to Alonzo B. Corey, marked No. 34; Joseph Shurtliff, marked No. 35; and John B. Edick, marked No. 10, witnesses produced on the part of the petitioners. They also refer the house to the testimony of David M. Moore, marked No. 35; John Lassells, marked No. 16; John A. Mercelis, marked No. 17, inspectors of election. John Yan Santvoort, marked No. 18; John Hull, Jr., marked No 19 ; clerks of election. Also to the testimony of Henry Mercelis, marked No. 24; 'William E. Bussell, marked No. 25 ; and David Leavitt, marked No 26 ; being testimony applying to the care and custody of the ballot-box. Theodore L. Burgess appeared before your committee and testified that he did not know for whom he voted for member of Assembly at the last general election held in the second ward of the city of Schenectady; intended to vote for Theodore W. Sanders ; could not say he voted the ticket he received of Adrian Y. S. Barhydt; voted first day of election ; was crowded up to the poll; was very much under the influence of liquor at the time that he received tickets from both political parties. Your committee would refer the House to the testimony of Adrian Y. S. Barhydt, marked No 7, relative to the vote given-by Burgess. Barhydt testified that Burgess voted on the morning of the first day of election, and that he was not challenged. The poll lists of the last general election of said ward, kept by the clerks of the election, has been produced before your committee and their identity proven; also the list of persons challenged and sworn, certified by the inspectors of said ward as required by law, has been produced and proven. Your committee refer the House to the testimony of John Hull, Jr., marked No. 28, one of the clerks of election who testified that one hundred and six votes had been received at noon of the first day of election. Your committee on an examination of the poll list kept by the said John Hull, Jr., above referred to, find that the name of Theodore Burgess, who was proven to your committee to be the *128 same person called in the testimony of Adrian Y. S. Barhydt, Theodore L. Burgess, must have voted in the afternoon of the first day of said election, as his name stands at number one hundred and forty three on the poll list, and by an examination of the list kept and certified by the inspectors, of the persons challenged and sworn, it appears that Burgess was challenged, and took the oath prescribed by section 7 of chapter 389 of the Laws of 1869, also the oaths prescribed by,section 18, of title 4, chapter 6, part first of the Revised Statutes.
Your committee, on referring to the official statement of the board of county canvassers, a copy of which is included in this report, find that, allowing to John I. De Qraff the fifty-six votes admitted by the counsel of Theodore W. Sanders, in addition to those that have been proven by the witnesses, still Theodore W. Sanders would have the greatest number of votes for member of Assembly in the county of Schenectady. ,
The committee have given to the House the evidence in this case, and being sensible that nothing less than the purity of our elections is involved in the question, observe, that from_a careful examination of all the testimony, it appeared to your committee that the election in the second ward in the city of Schenectady was legally and properly conducted by the inspectors, and that there was no evidence by which any fraud or improper conduct could be imputed to the officers of the board of election.
The evidence of David M. Moore, one of the inspectors (the political friend of John I. De Draff)', whose character was admitted by the counsel for the petitioners to be good and unquestionable (together with the other testimony taken in the case), appeared to your committee to place this affair in its true light. He saw what took place at the poll of election, heard the insinuations that were made, w.as an attentive observer of all that transpired, voted for John I. De Graff; observed, as the eléctors presented their ballots to the inspectors to be deposited in the ballot-box, that some of them had the appearance of having been erased with inlj; that on the final can vass about thirty ballots were found in the Assembly box with the name of John I. De Qraff erased and the name of Theodore W. Sanders written thereon; that they had the same appearance which he observed when they were presented by the electors; that he did not believe a single' vote was changed in the Assembly box from the time they were deposited there by the electors to the final canvass.
*129 A majority of the committee, being fully satisfied of the fairness and purity of the said election, respectfully offer for the consideration of the House, the following resolution :
Resolved (as the sense of this House), That they are not satisfied that fraud or corruption has been practiced upon the ballot-box for member of Assembly at the late general election in the second ward of the city of Schenectady, and that the prayer of the petitioners ought not to be granted.
T. H. PORTER.
DANIEL TOEFEY.
O. MERSEREAU.
Resolutions laid on the table. On motion of Mr. Nichols,
Ordered, .That said resolutions be laid on the table.
Assembly Journal, 1840, pages 831, and 1832.
Report laid on the table.
On motion of Mr. I. H. Porter,
Ordered, That said report and resolution be laid upon the table.
MINORITY REPORT OF COMMITTEE ON PRIVILEGES AND ELECTIONS.
Mr. Nichols, from the minority of the standing committee on privileges and elections, reported as follows:
Report of the minority of the committee on privileges and elections, on petitions, of electors of Schenectady county.
The undersigned, from the minority of the committee on privileges and elections, to whom was referred the petition of electors of the county of Schenectady, praying for an investigation of certain alleged frauds committed upon the ballot-boxes in the second ward of the city of Schenectady, at the late general election, and that John I. De Graff be permitted to a seat in the present House of Assembly in the place of Theodore ~W. Sanders, the member returned, report: That the committee have^iad the said matter in charge, and although great delay has been occasioned by the manner in which the investigation has been conducted, yet the undersigned would state that they have embraced the earliest opportunity after the conclusion of the examination, to present to the House the views of the minority of the committee.
The petitioners, among other things, represent that they believe, a most glaring fraud was committed in the said second ward of the city of Schenectady at the last general election • and among the evidences *130 to sustain sneli a belief, the petitioners state that upon a canvass of the votes in the said second ward, that Theodore W. Sanders, the member returned, liad his name on one hundred and ninety-seven of the ballots; and that John I. De Draff, for whom they claim a seat in this House, had his name upon but eighty-seven of the ballots in said ward; thereby giving Mr. Sanders a majority of one hundred and ten votes in said ward; and that since the said canvass, one hundred and seven of the voters in the said ward, whose names were upon the poll-list and who voted at said election, had been sworn before officers authorized to administer oaths, and testified that at the said election they had voted in said ward, and had voted for John I. De Graff for member of Assembly, and had seen their votes deposited in the ballot-box in said ward. '
In the progress of this unpleasant and responsible investigation, the committee have most earnestly labored to arrive at the truth, and to divest it of all party feelings or considerations.
The undersigned'have not deemed it necessary in the report of their’ conclusions from the testimony to detail the whole of the testimony (it being very voluminous); but they have set forth the substance of so much of that which has a bearing upon the case, as to show the correctness of their conclusions.
It appears that the board, of inspectors in the said second ward consisted of John A. Merselis, Davyl M. Moore and John Lassells, appointed by the common council of the city of Schenectady, and two clerics, John Hull, Jr. and John Yan Santvoord, appointed by said inspectors ; it further appears that three ballot-boxes were Jcept by said inspectors; one for the reception of votes for the proposed amendment to the constitution, one for the reception of votes for three Senators, and one for votes for members of Assembly ; these boxes were constructed with two slides at the top, sliding in at the end of the box; the upper of which slides, when closed, is fastened by the bolt of a common lock entering it; which lock, almost any ordinary key of the proper size will unlock; through the lower slide is an aperture in the center, cut large enough to admit the ballots through into the box ; and upon this lower.slide was also the words : County, State, or Constitution, to designate the box; by unlocking these boxes both these slides can he drawn out; in 'addition to this common lock, the only other security taken by the inspectors on the first day at 'noon, was the putting a seal of sealing wax upon the upper slide of the box, and another upon the end of .the box below, *131 or on one side of the key hole ; and putting a strip of paper about one and a half inches wide from one seal to the other drawn over the key hole; and additional sealing wax on top of the paper, with an impression made upon the same with a stamp, so that no access could be had to the key hole but by tearing the paper or removing the seal.
Two of the inspectors, Messrs. Merselis and Moore, having no suspicion of fraud cast upon them by the petitioners, or by the testimony, have not, except when called upon as witnesses, attended the investigation. The other inspector, Mr. Lassells, against whom the petitioners allege some suspicious circumstances, has attended and interested himself in- the examination, as a matter personal to himself; and for .this reason, much of the testimony and most of the issues which have rendered the examination tedious and embarrassing, relate to the character and conduct of this inspector.
On the question11 of the conduct of Mr. Lassells, and also as to whether he had the county box during the recess of the first day of election at noon, there is much conflicting and contradictory evidence. He swears positively before the committee that he did not have that box during the recess at noon of the first day; and yet he informed one or two persons, on that day, that he thought he did have it. Mr. Hull (one of the clerks) says that he supposed Mr. Lassells took the county box at noon of that day, and remained of that opinion until they were about to close the poll at night, when a dissection arose between the membej’s of the board as to which of them had the custody of the county box at noon, Mr. Lassells then denying that he had taken it. The other inspectors both say they supposed Mr. Moore took it on that day at noon, but they are not positive-; and yet it appears they entertained a different opinion in the afternoon of that same day, and had a discussion on that subject, which, it seems by Mr. Hull’s testimony, was settled by agreement, upon the denial of Mr. Lassells, and not upon any positive knowledge of the fact.
John A. Barhydt, one of the tally men, and who remained in the room with the inspectors, swears positively that he was appointed by a committee to keep a tally roll of the voters, and to prevent the inspector, Mr. Lassells, from taking the county box, if he could help it; that for this reason he (the witness Barhydt) kept his eye upon the county box from before the time it was closed until it was taken away; and he says that he is positively certain that Mr. Lassells did *132 not take the comity box at the recess of the first day at noon ; that after the boxes were closed, Mr. Lassells took the State box and placed it on the top of the county box, then drew them toward him; witness supposed lie intended to take both boxes. He (Barhydt) then proposed to Mr. Lassells that, as there were three inspectors, each should take a box, to which Mr. Lassells assented. Lassells then took the State box and shoved it toward Mr. Moore, and' took the county box under his arm and walked out of the room. 1 The box taken by the inspector, Lassells, at’noon of the first day, lie says, was taken by him to his own house, and put in a room up stairs, and he locked the door of the room at the time he placed the box there. Henry Merselis, another witness, states that he went from Mr. Lassells’ house with him, when he (Lassells) went to the poll in the afternoon, and that when the boxes were opened, he discovered that the box which Lassells had was the State box; that he noticed it particularly, to know which box Lassells had. Lassells also told this witness he thought he had the county box.
John R. Edick, another witness, states that he was present when Lassells brought back the box in the afternoon of the first day; that when he was about to open them, or after they were unlocked and before they were opened, Lassells commenced shoving and changing the position of the boxes back and forth upon the table; witness then spoke to Lassells, and told him he was good upon the shuffle board. Such is the conflicting testimony on this point.
Heither of the inspectors, except Mr. Lassells, are positive as to who had the county box at noon of the first-day. He is positive he had the State box, although he informed tw© or three persons that day that he thought he had the county box. The boxes were made in his (Lassells’) shop. John A. JBarhydt is positive Lassells took the county box, and gives his reasons why he watched so closely, with directions expressly to prevent it. Henry Merselis, on the other side, is equally positive he had the State box, and he was also anxious, and watched to discover. John R. Edick shows that Lassells performed a'movement with the boxes by changing their position before they were opened, that would prevent Henry Merselis from knowing which box Lassells brought to the poll.
All the inspectors are of the opinion that the boxes, secured as they were, could not have been violated at the recess without their being able to discover it; and yet your committee have no doubt upon their minds (from recent experiments made to ascertain the *133 fact, and also from the testimony .of Solomon Drnllard, that lie had tried the experiment on a box secured in the same manner) that the seals and papers may be removed, the boxes violated, and the seals so replaced as to wholly avoid detection, if in possession of a person so basely disposed. The undersigned cannot, therefore, give much weight to the evidence that tlies# boxes were secure from violation by being sealed in the manner described by the inspectors, inasmuch as it appears that they were not secured strong enough to prevent above twenty of the votes deposited therein for John I. De Graff from getting out; and most certainly a security which would prevent an individual from getting in would have prevented ballots from getting out.
Although the investigation lias been prolonged and embarrassing, and though many of the questions, upon the various issues which were presented, are left by conflicting testimony still in doubt and uncertainty, yét, upon the important question with which the committee were charged, the nndersigned regret to state the testimony is such, the conclusion is irresistible, and that they are constrained to say, that they believe no reasonable and unprejudiced man can doubt that a most gross and corrupt fraud has been practiced upon the ballot-boxes, in the said second ward of the city of Schenectady, at the late election for member of Assembly.
It is not only remembered to have been so generally, but is also drawn from the proofs in this case to have been so, in the city of Schenectady in particular, that the last election was a warm and closely contested issue between the two great political parties of the day ; that the individuals composing and supporting each of these parties seem, with very few exceptions, to have been previously as well as subsequently distinctly known and recognized. Each of these parties’ had, previously to the election, furnished themselves with a poll list of the voters in said ward; each of these parties had a tallyman attending the board of inspectors during the three days of election, to check off voters as they presented their ballots, and each of said •parties had, therefore, a knowledge, within a few votes of certainty, of what the result must have been in the said ward; and both parties, at the close of the polls and since, seem equally unable to account for the extraordinary majority which the votes in the ballot-box at the time of canvass gave tó Mr. Sanders.
But the undersigned have still greater certainty of the correctness of their conclusions than this. The original poll list, as kept-by the *134 clerks at tbe election, lias been before the committee. Fifty-six of those persons whose names were on the poll list, from their own political character, were admitted by both sides (without other proof than their affidavit, annexed to the petition), as. having voted for Mr. De 'Graff, in the second ward, the names of which electors are hereunto annexed, marked B. Fifty-three Mother persons, whose names are upon said poll list, have been sworn before the committee, and state that they severally voted for John I. De Graff, for member of Assembly in said ward, and saw their votes deposited in the ballot-box, the names of which electors are also hereunto annexed, marked C; making, in all, the number of one hundred and nine electors as having-sworn they voted for Jo'lrn I. De Graff, for member of Assembly in in said second ward; and only in relation to two or three of the voters thus sworn or admitted, has there N in any doubt or contradiction.
Here, then, in the opinion of the undersigned, is the most’unerring and conclusive certainty that their conclusions are correct; that at least from one hundred and six to one hundred and nine of the voters in that ward, known both before and since by both parties as the political friends of Mr. De Graff, and now before the committee, and previously by affidavit-, having sworn to the fact, that they did so vote for Mr. De Graff; that his name was seen upon the ticket they voted, and that they saw said ticket deposited in the ballot-box. And yet, but eighty-seven of such votes for Mr. De Graff were found on the canvass. There is some testimony before the committee, throwing a doubt whether the votes' of Theodore L. Burgess and Nelson Hall, two of the voters in said ward, and witnesses before the committee, were actually given for John I. De Graff; but as the proof that the votes of at least one hundred and six or one hundred and seven voters in said ward, not only intended but actually did vote therein for John I. De Graff, the undersigned cannot doubt, nor does the testimony in the case warrant, any such doubt. Flow the remainder of about one hundred and fifty voters, whose names 'are also upon the poll list, voted at said election, the undersigned have no knowledge, as they have not been produced or sworn before the committee. Admitting that every one of these voted for Mr. Sanders, still the fraud would remain unexplained, and the result equally uncertain.
The undersigned, however, feel bound to say, that they have been unable to bring home this fraud with any degree of certainty upon any one individual; and there has not been the least evidence to *135 charge the same upon the board of inspectors, while acting together as such ; and it is admitted by both parties and witnesses, that against two of the inspectors, Messrs. Moore and Merselis, there is neither a charge nor suspicion of fraud in the transaction ; it has also been proved that Mr. Lassells has heretofore sustained a fair character, but the undersigned have not deemed it their duty to report that no fraud has been committed, merely because it has not been proved that the person committing it did, or did not, take with him a witness to the first transaction, or because it has been done so secretly and cunningly, that detection is not absolutely certain.
All the inspectors and clerks of the poll have been before the committee and testified in relation to the manner of conducting the election ; of keeping and securing the boxes; and also as to whom the custody of the boxes w..re intrusted; from all of whom it is satisfactorily settled (in the opinion of the undersiged), that this fraud must have been committed during the recess or adjournment of the board on the first day at noon ; it also appears that John A. Merselis, one of the inspectors, did not have the custody of the county box, either during the recess at noon or after the adjournment at night of any of the days of election ; it also seems to be established beypnd doubt, from the testimony of all the board of inspectors and others, that the said county box, after the recess at noon of the first day, was kept in the possession and custody of David M. Moore, one of the board of inspectors ; and that during the time it was in his custody, he testifies, that it was kept safely locked up in a drawer of his house, and could not have been rifled, as he thinks, nor access had to it, except by himself; it was also admitted on both sides as well as proved, that the character of Mr. Moore, as well as Mr. Merselis, is above suspicion; and'Mr. Moore is the political friend of Mr. De Graff, and voted for him at said election.
The custody of the county box during the recess of the first day, at noon, is involved in some doubt; the three boxes which were used at the election, and which were distinguished, as.before stated, by the following labels on the inner cover, Constitution, State and County, were so very similar and alike in their appearance, that when the upper slide was closed, neither of the inspectors, except Mr. Lassells, were able to distinguish the one from the other, and neither of the inspectors, therefore, except Mr. Lassells, swears with certainty who had the custody of the county box during the recess of the first day at noon. But inasmuch as all the circumstances combine to show *136 that the fraud was committed during this recess, the undersigned have no doubt that Mr. Lassells must have taken this box at that time; and when we take into consideration the situation of Mr. Lassells’ house, it having three front doors, with cabinet ware rooms above and. below, that lie had at the time in his employ, several workmen, and others who have not been called upon as witnesses, who could have had achess to the said box, either with or without Ins knowledge; that these ballot-boxes were made in his shop, and were kept there a part of the time; that he and his workmen were familiar with the locks of these boxes, and knew what keys would unlock them, and actually had so unlocked them; that he, himself, after leaving the ballot-box in his upper room, left his house long enough to have had this fraud committed; that one of his workmen, who was taking an active part in the election, swears that he stood in the front door of one of the lower ware rooms, half an hour or more, watching his return, and then went to dinner without seeing him ; that he, himself, was mysteriously absent from his dinner with his family, on that day; that he did not dine at all on that day; and that he has not accounted for his absence, nor shown where he was during all this time. The undersigned' consider all these circumstances, connected with others, more than establish a probability that during this recess some evil disposed person committed this daring-fraud ; and also, inasmuch as no other such an exposure or opportunity was presented, during said election, for the fraud to have been committed.
Another proof that this ballot-box has been corruptly violated, is the fact that but one ballot was found on the canvass on which the name of Mr. Sanders had been erased, and the name of Mr. De Graff written upon it; and yet Lawrence Slover swears»he voted a ticket of that kind in the forenoon of the first day; and Abraham Lewis swears he voted sueh a ticket on the second day of the election. The inspectors testify that but two tickets, which were entirely written, were found on the canvass; and yet, Peter V. Peck, Stephen Cooper and Simeon M. S. Swart, all swear they voted written tickets; the two former swear they voted in the forenoon of the first day; as to the latter, it does not appear when or for whom he voted. If this fraud was committed, the loss of these votes is accounted for.
It is shown before the committee, that on the canvass there were nearly thirty tickets on which the name of Mr. De Graff in print had been erased and the name of Mr. Sanders written thereon; of the *137 one hundred and nine voters that have sworn that they voted for. Mr. De Graff, but two of them-have voted altered tickets; two others say they voted entirely written tickets; all the others say they voted the printed ballot without any erasures and with Mr. De Graff’s name thereon ; from whence, then, came all these erased ballots ? not from the one hundred and nine who swear they voted for Mr. De Graff (excepting the two); the inspectors say they noticed from the ballots, at the time of voting that there were several erased ballots; but it is neither proved or pretended to be proved that any of the one hundred and nine who swear they voted for Mr. De Graff (excepting the two above named), did vote any such ballot; the remainder of them are left in the same mystery that involves the whole subject.
Among the many regrets which the proofs in the investigation of this important subject have brought to the undersigned, they cannot forbear to mention one, and to feel it to be their duty to animadvert upon it; and that is, the corrupt and corrupting influence produced in the community by the betting on elections ; and the regret is the more painful, when we are compelled to bring this corrupt practice home to an inspector, who is charged with having the custody of the ballot-box at the very time this fraud is believed to have been committed ; such a known violation of duty, as well as of law, in the conduct of an inspector of election, evinces a total disregard, not only of public opinion, but to that high and honorable feeling so necessary to the proper discharge of official duty; an inspector who could permit his political feelings so far to control and "overrun his prudence must be an unsafe depository of so sacred a trust as the ballot-box.'
The undersigned cannot believe that the additional oath of the inspectors before the committee, that- they severally had committed no fraud, adds anything to the weight of evidence in the case; they had taken the same solemn obligation before the election, that they would well and truly perform their duty ; and if this oath had been violated by either of them at the election, it is not probable it would be confessed before the committee now. If it be said to be too severe or uncharitable not to treat all the inspectors with equal censure, we reply that they are not equally contradicted by testimony, facts and circumstances, and have not all been equally imprudent.
The original poll list of the voters in the second ward having been before the committee, the petitioners have called as witnesses (including those admitted), whose names are thereon toa number exceeding *138 more than twenty, who swear they voted-for John I. He Graff for member of Assembly, than the ballot-box' at the time of the canvass gave to that candidate, the whole number of votes in the ballot-box having agreed with the poll lists. How then can this change of votes to such an extent have taken place % How can thes'e votes have escaped from the box ? How come an equal number of other votes to be made to supply their place ? What became of one of the written ballots deposited in that box in the forenoon of the first day of election. The inspectors swear but two such votes were found at the canvass ? What became of the two tickets with Hr. Sanders’ name erased, and Hr. He Graff’s written thereon ? But one such vote was found in the box at the canvass. All of these but one were voted in the forenoon of the first day. Will it be believed that such a number of intelligent electors in one ward, and all on oiie side, could have been so deceived or cheated ? Even upon such a supposition, a gross fraud upon the electors must have been practiced ; it can neither be accident, mistake, or error of judgment. If, then, the witnesses who have testified, that they voted for Mr. He Graff, are to be believed, and there having been attempts to impeach but two or three of them, must not the weight of evidence determine this case'as it would any other case in a court of justice % If this is to be the rule by which certainty is to be determined, then the undersigned are most clearly of the belief that at the late election held in the second ward of the city of Schedectady, a gross fraud has been committed upon the ballot-box containing the votes for member of Assembly. To come to any other conclusion upon the facts before us, would be treating with contempt the solemn oaths of a large number of the electors of said ward, to sanction corruption and gross negligence, with no better excuse than to disbelieve its existence, because the willful perpetrator cannot with certainty be convicted, and to strike a fatal blow at the only security of our liberties, the purity, the unsuspected purity of the ballot-box.
The undersigned being therefore entirely satisfied that such a fraud has been committed upon the ballot-box in question, the only conclusion that can follow in the premises is, that no dependence can be placed upon the canvass of the votes for member of Assembly, in the said second ward.
The moment that uncertainty is proved upon it, there is no power in this House to determine how far that uncertainty extends ;■ nor should it, in the opinion of the undersigned, ever be tolerated to be *139 established as a rule, that the party proving a fraud shall be limited to the extent of the fraud as proved, or shall be allowed the benefit of his proof no farther than he has established it; it is believed to be a maxim in morals as well as in law, “ false in part, false in the whole.” In the opinion of the undersigned, falsity is already stamped upon this canvass ; no corrupt canvass can be rendered pure, by the action of this House. Nothing but the total destruction of this false and uncertain canvass would comport with the true dignity and character of an honorable House. Let the belief be entertained that this House is willing to sustain the seats of its members upon fraud, falsehood, or even upon imcertainty, and the right of suffrage so highly valued, so dear is every citizen, so important to the liberties of this republic, is but an empty name, a mockery and pretence..
The questions whether the returned member shall still hold his seat, or whether the prayer of the petitioners shall be granted, or whether the said seat be not entirely vacated, are matters of small moment, when taken into the account of this momentous question of the purity of the elective franchise. If even suspicion be allowed to exist here; if the most rigorous scrutiny be not adopted; if the whole basis upon which an elective government can be sustained is permitted to receive so deadly a blow; if that “ righteousness which exalteth a nation ” is to be disregarded in high places, then may we despair of the perpetuity of our free institutions; the death blow will have been struck to the sovereignty of the people.
It appears from official certificates, that the returned member, Theodore "W. Sanders, has a majority of only fifty-five votes over John I. De Graff in the county of Schenectady. It also appears from the canvas's of the said second ward, that said Theodore W. Sanders had a majority in said ward of one hundred and ten votes over the said John I. De Graff. Setting aside the votes in the Assembly box of that ward, as fraudulent or uncertain, and the remaining votes would entitle the petitioners to have their prayer granted by this House.
The undersigned therefore ask leave to offer the following resolutions.
S. NICHOLS.
D. BELLINGER.
*140 Resolved (as tlie sense of this House), That they are satisfied that fraud or corruption has been practiced .upon the ballot-box for member of Assembly, at the late general election held in the second ward of the city of Schenectady.
Resolved (as the sense of this House), That Theodore W. Sanders, the member of Assembly returned from the county of Schenectady, ought not longer to be entitled to his seat in this House; that the prayer of the petitioners ought to be granted; and that John I. De Graff be admitted to a seat in the place of the said Theodore W. Sanders.
Assembly Journal, 1840, pages 829-832.
See testimony accompanying reports, Assembly Document, 1840, No. 291.
RESOLUTION TO CONSIDER THE SCHENECTADY CONTESTED ELECTION CASE.
In AsseMbly, April 29th, 1840.
On motion of Mr. Sanders:
Resolved, That this House will, at ten o’clock to-morrow morning, take up and consider the report of the standing committee on privileges and elections, in relation to the alleged fraud in the second ward of the city of Schenectady, at the last general election; and that they will continue the consideration of the same on each day at ten o’clock until the same shall be finally disposed of.
Assembly Journal, 1840, page 1198.
RepoRt Considered.
In AsseMbly, April 30, 1840.
The House proceeded to the consideration of the resolution reported by the majority of the standing committee on privileges and elections, to which was referred the petition of sundry electors of the county of Schenectady, praying for investigation of certain alleged frauds committed upon the ballot-boxes in the second ward of the city of Schenectady, at the late general election, and that John I. De Grafif be admitted to a seat in the present House of Assenibly, in place of Theodore W. Sanders, the returned member, which resolution was in the words following, to wit:
Resolved, as the sense of the House, that they are not satisfied that fraud or corruption has been practiced upon the ballot-box for member of Assembly, at the late general election, in the second *141 ward of the city of Schenectady; and that the prayer of the petitioners ought not to be granted.
Debate was had upon said resolution, when
Mr. A. G-. Cliatfield moved to amend the same, by striking out all after the word “ Hesolved,” and inserting so that the same will read as follows, to wit:
Resolved (as the sense of this House), That they are satisfied that (fraud or corruption has been practiced upon the ballot-boxes for member of Assembly at the late general election, in the second ward of the city of Schenectady.
Resolved (as the sense of this House), That Theodore W. Sanders, the member of Assembly returned from the county of Schenectady, ought not longer to be entitled to.his seat in this House; that the prayer of the petitioners ought to be granted, and that John I. De Graff he admitted to a seat in the place of the said Theodore W. Sanders.
The Speaker put the question whether the House would agree to the said motion of Mr. A. G. Cliatfield, and it was determined in the negative.
Ayes 38. Nays 61.
RepoRt Adopted.
Debate was continued on the said resolution offered by the majority of the standing committee on privileges and elections, when Mr. Speaker put the question whether the House would agree to the said resolutions, and it was determined in the affirmative.
Ayes 60. Nays 39.
Assembly Journal, 1840, pages 1204, 5, 6.